JBLKCHAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ANDREA PETERSON, et al.,

                    Plaintiffs,

          v.                              19 CV 3260 (KPF)

MUELLER WATER PRODUCTS, INC.,
et al.,

                    Defendants.

------------------------------x
                                          New York, N.Y.
                                          November 21, 2019
                                          10:00 a.m.

Before:

                    HON. KATHERINE POLK FAILLA,

                                          District Judge

                         APPEARANCES

THE ROSEN LAW FIRM PA
     Attorneys for Plaintiffs
BY:  SARA E. FUKS

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
     Attorneys for Defendants
BY:  SCOTT D. MUSOFF
     JAY B. KASNER
     TONAIA CHARNANI

JBLKCHAC

(In open court; parties appearing telephonically)

MS. FUKS:  Good morning.  This is Sara Fuks, from The Rosen Law Firm, for lead plaintiff.

MR. MUSOFF:  Good morning.  Scott Mussof, Jay Kasner, and Tanaia Charnani, from Skadden Arps, for defendants.

THE COURT:  Good morning to all of you.  This is Judge Failla.

Ms. Fuks, with respect to Mr. Chapman, are you in contact with his counsel?  Should I be expecting his participation in this call?

MS. FUKS:  No, your Honor.  In light of the fact that he is not lead plaintiff, counsel won't be participating in the call.

THE COURT:  Okay.  Thank you for letting me know.  We won't wait for him unnecessarily.

I, again, appreciate, first of all, your patience in waiting for my decision on the motion to transfer and, as well, your willingness to do this telephonically.  I thought that easier.

What I'm going to do is to read to you now my decision on the motion to transfer.  If you're worried about coughing, or sneezing, or otherwise cutting into the conversation, I will take no offense if you hit mute on your respective speakerphones, but I will begin.

The purpose of this conference is for me to render an

JBLKCHAC

oral decision on plaintiffs' pending motion to transfer the matter to the District of South Carolina or, in the alternative, to the District of Georgia.  And for the reasons that I will now discuss, this motion is denied.

The parties are familiar with the procedural history, the allegations in the amended complaint, and the arguments raised in the papers filed regarding this motion.  I'm going to briefly summarize, as necessary, the most relevant portions of the procedural history.

Glen Chapman filed an initial complaint in this matter on April 11th of 2019, alleging violations of the federal securities laws.  Andrea Peterson, represented by The Rosen Law Firm, filed a motion to become lead counsel and lead plaintiff under the PSLRA on June 16th of 2019.  In so doing, Ms. Peterson represented that she would be able to represent the interests of the class in this action, which had been filed in this district.

On June 24th of this year, Mr. Chapman withdrew his competing motion to be appointed lead plaintiff.  Then, in consequence, the Court appointed Ms. Peterson as lead plaintiff on June 27th of 2019 and, as well, appointed The Rosen Law Firm as lead plaintiffs' counsel.

On July 8th of 2019, the Court adopted the parties' stipulated proposed schedule for the filing of an amended complaint, as well as an anticipated motion to dismiss.  The

JBLKCHAC

amended complaint was to be filed by August 27th of 2019.

On August 21st of 2019, plaintiffs requested, and received, an extension of time to file the amended complaint. As it happened, they filed their amended complaint on September 18th of 2019. That same day, plaintiffs filed the motion to transfer that is the subject of this discussion, and that motion to transfer was fully briefed on October 10th of 2019. Defendants, as well, filed a motion to dismiss on November 1st of 2019.

I will briefly review the standards for the motion to transfer.

District courts may transfer a civil action for the convenience of the parties and witnesses, in the interest of Justice. I'm citing here to Section 1404(a) of Title 28 of the United States Code, and as one of many decisions discussing this, I am quoting from Semente v. Empire Healthchoice Assurance, Incorporated, 2014 WL 4967193.

And on a motion to transfer, the burden is on the movant to show that the transfer is justified. Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum, discretionary transfers are not favored. This is a Second Circuit summary order, Xiu Feng Li v. Hock, 371 F. App'x. 171.

Motions to transfer lie within the broad discretion of the district court and are determined upon notions of

JBLKCHAC

convenience and fairness on a case-by-case basis.  I quote here from In re Cuyahoga Equipment Corporation, 980 F.2d 110, a Second Circuit decision from 1992.

And in considering a motion to transfer, I must first determine whether the action sought to be transferred is one that might have been brought in the transferee court.  I'm quoting here from In re Collins & Aikman Corporation Securities Litigation, 438 F.Supp.2d 392, a Southern District of New York decision from 2006.  And the factors that I must consider are as follows:  The plaintiffs' choice of forum, the convenience of witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties.  Here is the case that is most often cited:  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, a Second Circuit decision from 2006.

Courts also routinely consider judicial economy, the interests of justice, and the comparative familiarity of each district with the governing law.  That is a District of Connecticut decision from 2016, Stein v. Teekay Corporation.

The first factor that I considered was, I believe, the easiest, which is could the action have been brought in the transferee jurisdictions.  No one in this case disputes that this suit might have been brought in the District of South

JBLKCHAC

Carolina or in the Northern District of Georgia, and I accept this fact as true.  I then proceed to the factors I've just listed.

With respect to the issue of the plaintiffs' choice of forum, that is typically accorded great weight, but, here, however, Ms. Peterson is lead counsel in a nationwide -- I'll say this again -- Ms. Peterson is lead plaintiff in a nationwide class action.  The residents of a class representative is often a mere happenstance, which may be discounted by a court when weighing other factors.  That is a decision of Judge Carter from this district, Garity v. Tetraphase Pharmacies Incorporated, from this year.

It is also well-established that a plaintiffs' choice of forum is afforded little weight in a purported class action where numerous plaintiffs are each possibly able to make a showing that a particular forum is best suited.  This is from Judge Nathan of this district in a case called In re ChannelAdvisor Corp. Securities Litigation.

So I, therefore, afford the preferred forum of the lead plaintiff little weight.

On the issue of convenience of the witnesses: Plaintiff makes a conclusory claim that South Carolina or Georgia would be more convenient for defendants and likely witnesses in the case.  And in a securities class action, courts presume that the key witnesses are the officers and

JBLKCHAC

employees of the corporate issuer who participated in drafting or distributing the challenged statements.  I'm quoting there from In re Global Cash Access Holdings, Incorporated Securities Litigation, a decision from Judge Kram in this district in 2008.

Here, the key witnesses who appear to be employees of the defendants, most likely residing in the Northern District of Georgia, but also important, defendants in this case have foresworn any inconvenience their employees might suffer by continuing the litigation in New York.  And, indeed, defendants state that their employees are willing to travel to New York.

It seems to me -- and I'll discuss this more a little bit later -- that travel to South Carolina would be equally inconvenient for witnesses based in Atlanta as would travel from New York.

Plaintiffs also claim that there are likely numerous nonparty witnesses who reside in Georgia and who might be inconvenienced should this litigation proceed in New York, but I need more than a rumination that such a thing could happen.  I was hoping for something -- some representation, an affidavit, or statement -- identifying a witness or more and the probative subject matter of their testimony.  Instead, I have the speculative claim, with no identification of witnesses, and I, therefore, find the convenience of the witnesses factor to be neutral.

JBLKCHAC

The next factor is location of relevant documents and relative ease of access to sources of proof.  As everyone on this call knows, in the age of electronic documents, easy copying, and overnight shipping, this factor assumes much less importance than it did formerly, and, indeed, the factor generally does not carry much weight, and I, therefore, find it neutral.

With respect to the convenience of the parties:  The defendants are headquartered in Georgia, but wish for the litigation to proceed in New York.  Now, any convenience to them would not support transfer.  The plaintiff claims that either South Carolina or Georgia would be more convenient forum.

Ms. Peterson would have to travel two hours from South Carolina and one hour from New York, if that's -- let me try that again.  To get to South Carolina, it would be easier -- actually, I'm going to try it yet again, and this time, get it correct.  Ms. Peterson is located in South Carolina.  South Carolina is the more convenient forum.  It would be a bit of a stretch for her to go to Atlanta and a bit longer flight to go to New York, and I find this to be a minor difference of about an hour, even taking into account the discussions of plaintiffs' counsel regarding potential traffic and tie-ups once one landed in the New York area.

But in other scenarios, courts have found that such a

JBLKCHAC

small difference regarding travel do not warrant transfer of the case.  In the case of Orb Factory, Ltd. v. Design Science Toys, Ltd, a Southern District of New York decision from 1998, a one-hour difference in travel did not warrant transfer of the case.  Nor am I convinced that plaintiff would be significantly inconvenienced if the case were not transferred to South Carolina or to Georgia.

Ms. Peterson is the only plaintiff who resides there, although I do concede she is lead plaintiff.  The other named plaintiff resides in California.  And while there may be some inconvenience in having to travel to New York, I have no reason to believe that Ms. Peterson is incapable of doing so.  I also have no reason to believe that she is in frequent need of travel to New York.  Yes, if there's a trial, she will attend it, but I suspect for a maintenance of the case and normal case administration, that can be done by phone and email.  And the defendants have offered to depose her in South Carolina.

So there is no showing from plaintiff that the balance of the parties' convenience favors either alternate forum.

With respect to the issue of the locus of operative facts:  The plaintiffs argue that the locus of operative events is in Atlanta, Georgia, where the defendants are located.  Yes, it's true, although, again, I'm not sure how important it is. I think that's a slight weight in favor of transfer.

With respect to the factor of the process to compel

JBLKCHAC

attendance of unwilling witnesses:  The plaintiff argues that neither party has identified any witness that resides in New York.  This is true, but no witness has been identified for me that exists beyond the subpoena power of this Court and would be unwilling to testify, and I, therefore, find the factor to be neutral.

I also think that there are alternate solutions in play, and I agree with the defendants' observation that the parties could videotape the testimony of any witness unwilling to travel to New York to testify.

On the issue of the relative means of the parties: The parties agree that this factor is neutral.  It is true that defendants may be better funded than the plaintiff, but The Rosen Law Firm has represented that it will be advancing plaintiffs' costs.

To me, actually, the most important factor in this case is that of judicial economy.  Judicial economy strongly counsels against transferring the case.  Plaintiff did not file the motion to transfer until after a scheduling for the filing of an amended complaint and motion to dismiss had been set. That schedule had been extended at plaintiffs' request, and then plaintiff filed the amended complaint.  At any point before the filing of the amended complaint, it could have been brought to my attention that there was going to be an interest in transferring this case to another district, and, in fact, I

JBLKCHAC

think that should have been raised at the time that plaintiff applied for the lead plaintiff position.

So while it is not dispositive of the issue, there has been no clear and convincing showing on the other factors, and there is, in my mind, no basis for transfer.

At this point in the proceeding, it is most efficient for this Court to retain the case.  So I find the transfer factors to largely be a wash.  Most are neutral, some weakly argue in favor of transfer, or denial of transfer, but I conclude that the plaintiff has not met the showing or the burden of clearing and convincingly showing that the balance of convenience strongly favors an alternate forum.

As I've mentioned, again, I'm not saddened or disturbed, but I'm just observing that no one told me about this transfer motion until an awful lot had been done.

For all of these reasons, really more the failure to show than anything else, the motion to transfer is denied.

Now, it is my understanding that we are in the process of briefing the motion to dismiss.  Ms. Fuks, am I correct?

MS. FUKS:  Yes, that's correct, your Honor.

THE COURT:  All right.  Yes, please continue.

MS. FUKS:  Yes.  I mean, I was just going to say that we are -- plaintiffs are filing their opposition to the motion to dismiss December 16th, pursuant to the Court's order deadline.  However, we also intend to move to amend the

JBLKCHAC

complaint due to additional evidence that we have discovered. So we will file our opposition on schedule and then request leave to amend, attaching a redlined copy showing the amended complaint.

THE COURT:  And you're certain, Ms. Fuks, that you will be filing an amended complaint?

MS. FUKS:  I'm fairly certain, yes, yes.

THE COURT:  All right.  Why I ask is --

Mr. Musoff, I imagine you're still on the line; is that correct?

MR. MUSOFF:  Yes, your Honor.

THE COURT:  Mr. Musoff, I don't want to be in a situation of deciding a motion to dismiss that's coupled with a motion to amend.

Is there a way in which, upon the filing of the plaintiff -- well, I guess is there a way to separate out the motion-to-amend component to see if, for example, you would consent to amendment and then file just a supplemental brief explaining why even these amendments are not sufficient rather than go through the drama of a motion to dismiss followed by the drama of perhaps a second motion to dismiss?

MR. MUSOFF:  Judge Failla, I think we can accommodate that and agree for judicial efficiency, but I think we'd like to see -- this is the first we've heard of it -- what their proposed amendment would be, so perhaps they could file a

SOUTHERN DISTRICT REPORTERS, P.C.•
(212) 805-0300

JBLKCHAC

motion to amend, and then we could react to that either by your proposal of a supplemental motion or it might be easier for the Court, we could just refile our motion to dismiss the amended complaint if we agree and consent to it.  But without seeing it, we'd like the opportunity to review it and discuss it with our client, if possible.

THE COURT:  Fair enough.

Ms. Fuks, let me explain.  I don't want to cause you unnecessary work, and I do appreciate that you are in the midst of responding and preparing your opposition papers, but if my resolution is going to be that I give you leave to amend, and we now have the -- I guess it would be a motion to dismiss the second amended consolidated class action complaint, that does seem like a waste of resources.  Is it possible that offline from this conference, you can speak with Mr. Musoff and see if, perhaps, what you could do instead is file just the motion to amend component rather than the opposition component and go from there?

MS. FUKS:  Sure, your Honor.  We're happy to confer with defendants.

I guess I'm just -- it would just be a little bit confusing with the timing of when we put our opposition to the current motion to dismiss in, on time or would we wait until the motion to amend?  Would we stay that and wait until the motion to amend was fully briefed?  I guess we would just have

JBLKCHAC

to figure out those contingencies.

THE COURT:  Exactly.  And that's what I was hoping you could discuss with Mr. Musoff and his team.

I will be reasonable, but I just think that I'm going to permit the amended complaint anyway.  We might as well just have a last, final chance for you to get the pleadings where you want them to be, and then an opportunity for the defense, I suspect, to move to dismiss just on one single complaint rather than two.

So, if you can't come to agreement, let me just say that without committing myself to this, I would certainly be receptive to an application to disaggregate the motion to amend from the motion to dismiss just to save, as much as possible, work for all of us.  Again, I won't decide it finally, but I am at least thinking through the issue.  I'm trying to, again, save work for the parties.

So, Ms. Fuks, after this call, in the coming days, please think about it, please speak with Mr. Musoff, and if the parties have a proposition for me, I will certainly entertain it.  And if it doesn't work, then we'll do something else.

Mr. Musoff, you wanted to say something?

MR. MUSOFF:  Yes.  Thank you, your Honor.

Yes, we would agree to decoupling them.  We would just respectfully request that they file their motion to amend promptly, so we could review the amended complaint, and then we

JBLKCHAC

can confer on perhaps consenting to that, or if we have reasons to oppose it, we can let the Court know, but then we would be able to move back to our motion to dismiss relatively promptly and proceed there for both amended pleadings.

THE COURT:  All right.

Ms. Fuks, would you be able to file your proposed amended complaint by the 6th of December?

MS. FUKS:  That should be along with the motion to amend?

THE COURT:  Yes.

MS. FUKS:  That should be fine.

THE COURT:  Okay.  Let's please do that.  I don't want to wreck your Thanksgiving.

And I'm going to -- and I'm doing this orally -- suspend briefing on the motion to dismiss.  We're going to deal with this motion to amend.

Mr. Musoff, when you get the motion, you will write back to me as to how you wish to proceed, whether you and your client consent or whether you'd like an opportunity to file an opposition.

MR. MUSOFF:  Thank you, Judge Failla.  We'll do so.

THE COURT:  Thank you very much.

Mr. Musoff, can I imagine that you will be getting a transcript of my decision today?

MR. MUSOFF:  Yes, your Honor.

JBLKCHAC

THE COURT:  Then I won't order anyone to get it, and I will receive a copy automatically.

Ms. Fuks, is there anything else you wish to bring to my attention in this conference?

MS. FUKS:  No.  Thank you, your Honor.

THE COURT:  I thank you as well.

Mr. Musoff, anything that you or your colleagues wish to bring to my attention in this conference?

MR. MUSOFF:  No, thank you.

THE COURT:  All right.  Thank you very much.  We are adjourned.

* * *